H. R. WALLIS ET AL. v. H. S. WILLIAMS ET AL.

No. 1810.   Decided March 4, 1908.

**1.—Election—Special Law—Removal of County Seat.**

In the proviso to section 194 of the Terrell Election Law that such statute should not "repeal any local option or special law of this State" (Acts, 1st Called Session. 29th Leg., Laws of 1905, p. 564), the words "special law" are used not in their technical legal significance, but in their popular meaning, and embrace all laws providing, for elections for special purposes, such as for the removal of county seats, regulations, differing from the general election law. These remain governed by the special provisions of the previously existing laws. (Pp. 397, 398.)

**2.—Same.**

The regulations of the Terrell Election Law as to the form of official ballots do not apply in an election for removal of a county seat nor invalidate such election by ballots not in conformity with them. (Pp. 397, 398.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Chambers County.

*Stevens & Pickett* and *J. R. Davis,* for appellants.—The court should answer in the affirmative the first question certified, and further erred in not answering in the affirmative, also, the second question certified by the Court of Civil Appeals. Foster v. Champlin, 29 Texas, 22; Engelking v. Von Wamel, 26 Texas, 471; Bear v. Marx, 63 Texas, 301; Cayce v. Curtis, Dallam, 403; Stockton v. Montgomery, Dallam, 475; Sydnor v. Chambers, Dallam, 605; Schloss v. Atchison, T. & S. F. Ry. Co., 85 Texas, 604; Dodson v. Bunton, 81 Texas, 658; Rev. Stats., art. 3268; 26 Am. & Eng. Ency. of Law (2d ed.), 607.

*Hugh Jackson, Marshall & Marshall, B. F. Louis* and *A. D. Lipscomb,* for appellees.—A statute prescribing a form of ballot and capable of being applied to all elections, will, of course, give way to one specially providing a different kind of ballot for only one particular kind of election. Rev. Stats., art. 814; Sutherland on Statutory Construction, secs. 217, 148, 157; Ex parte Keith, 47 Texas Crim. Rep., 283.

Section No. 46 of the Terrell Election Law of 1905 authorizing the use of other than official ballots where "otherwise authorized by law," and section No. 194 providing that it shall not "interfere with any special law," shows an unmistakable intent to leave the form of ballot in county seat elections governed by the special provisions of the county seat election law, which authorizes the voter to provide his own ballot. Sections referred to in proposition, Rev. Stats., arts. 814, 3268; Walker v. Mobley, 101 Texas, 28; 103 S. W. Rep., 490.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals for the First Supreme Judicial District. The statement and questions are as follows:

"This suit was brought by appellants against the appellees to contest the declared result of an election held in Chambers County on April 11, 1907, to determine the question of whether the county seat of said county should remain at the town of Wallisville or be removed to the town of Anahuac in said county.

"Upon the face of the returns out of a total of 634 votes Wallisville received 244 and Anahuac 390 votes. The returning board declared the result in accordance with these figures to be in favor of Anahuac by a majority of 146 votes.

"Upon the trial in the court below 24 votes cast for Anahuac and 2 votes cast for Wallisville at the Stowell box in said county were rejected, because the ballots were not signed by the presiding officer, and 35 votes cast for Anahuac were rejected on the ground of fraud and undue influence. Anahuac having a majority of 87 of the remaining votes, the result as previously declared by the county judge was confirmed and judgment rendered accordingly.

From this judgment contestants appeal and the case is now pending in this court.

"Two ballots were used at this election. Upon one of these ballots were printed the following words: 'Official Ballot for Remaining at Wallisville,' and upon the other: 'Official Ballot for Removal to Anahuac.' These ballots were prepared and furnished the election officers by the proper authority and no other ballots were used in the election.

"One of the grounds for contesting the election urged in the lower court and in this court is that the ballots used were illegal and that the use of such illegal ballots rendered the election void.

"Upon the foregoing statement we respectfully certify for your decision the following questions:

"1st. Does the Act of the 29th Legislature regulating the manner of holding elections and prescribing the kind of ballots to be used in elections held in this State (Chap. 11, Acts of First Called Session, 29th Legislature) apply to elections held to determine the location of a county seat?

"2d. If the foregoing question be answered in the affirmative, then did the use of ballots of the kind before described render the election in question in this case void?"

The determination of the first question depends upon the proper construction of the proviso contained in the 194th section of the Terrell election law of 1905. That section is as follows: "This Act is cumulative as to elections and penalties for violating the election laws of this State; except that it shall repeal the election Act approved by the Governor April 1, 1903; provided, that this Act shall not interfere with or repeal any local option or special laws of this State, except as herein specially provided and set forth." (Laws 1905, p. 564.) If the words in the proviso, "special laws," be taken in their restrictive technical sense, then the question should be answered in the affirmative, but if they be taken in their more popular and enlarged sense, as meaning "laws specially provided for," or "laws providing for special elections," then a negative answer should be given to the question. Technically a special law is a law which applies to an individual or individuals or to some individuals of a class and not to all of a class. But we have no doubt that in its technical sense the laws for the removal of county seats by election are general or public laws and not private Acts.

But there is another sense in which the word special as applied to laws is used. General is opposed to special and hence any law which makes provision for a special election is a special law in its popular sense. Therefore laws for a local option election, for a stock law election and others of a like character, while general in a technical sense are frequently spoken of not only in ordinary conversation as special laws but also by eminent jurists and judges of our higher courts. As pointed out by counsel for appellees in their brief, in Ellis v. Batts (26 Texas, 707), Judge Moore uses this language: "It is a well settled rule for the construction of statutes that a general law will not be held to repeal a particular

and special one on the same subject." The law here spoken of, was a general law but was special in its provisions. So in Hash v. Ely (100 S. W. Rep., 981), Judge Speer says: "So that the Terrell election law being a general law and the article last quoted a special law, the latter will control," etc. "The article last quoted" was article 1388 of the Revised Statutes in relation to local option elections, which is clearly a general law in its technical meaning. In ex parte Keith (47 Texas Crim. Rep., 283; 83 S. W. Rep., 685), Judge Brooks says: "The Terrell election law is a general law. The local option law is a special statute relating to localities." Again, in Ex parte Anderson (51 Texas Crim. Rep., 239; 102 S. W. Rep., 729), the same learned judge uses this language: "We held there was no conflict between the Terrell election law and the local option law, one being a general and the other a special law." Again, in speaking of a stock law election, Judge Davidson in Ex parte Kimbrell uses this language: "Again, this is a special law, in the comprehensive sense, as distinguished from those Acts of the Legislature which operate generally." (47 Texas Crim. Rep., 333; 83 S. W. Rep., 384.) This is enough to show that laws of the character of laws for determining the question of the removal of a county seat having special provisions differing from the general election law, are frequently spoken of in judicial parlance as special laws. Not only so, but in the 33d section of the Terrell election law itself we find this language: "The county judge, or if he fails to act, then two county commissioners, shall cause notice of a general election or any special election to be published by posting notice of election at each precinct thirty days before the election, which notice shall state the time of holding the election, the office to be filled, or the question to be voted on, as the case may be, provided that in local option, stock law and road tax elections the notices of elections or any other special election specially provided for by the laws of this State shall be given in compliance with the requirements of laws heretofore or hereafter enacted governing said elections respectively, and provided also that if a vacancy occurs in the State Senate or House of Representatives during the session of the Legislature or within ten days before it convenes, then twenty days notice of a special election to fill such vacancy shall be sufficient." (Laws 1905, p. 528.) Now it seems to us that the words, "any other special election specially provided for by the laws of this State," is equivalent to the words, any other special election provided for by the special laws of this State. From this it follows that within the meaning of the Legislature, local option, stock and road tax elections were provided for under special laws and that a county seat election is another special election provided for under such laws. Special laws specially provided for by laws of this State being equivalent as we think to special laws as used in section 194 of the Act in question, we are of opinion that the latter should be construed as being used in the same sense in section 194 as the former were used in section 33. If so, county seat elections are clearly excepted from the operation of the Terrell election law.

We see no good reason for excluding elections under special laws technically so called from the operation of the Act and including other special elections. Elections under special laws strictly so called are of infrequent occurrence, and as a rule are subject to precisely the same conditions as an election for the removal of a county seat, for a stock law and the like. There is usually in all such merely a proposition to be voted upon and the question is, shall it be adopted or not. This makes a broad line of distinction between general elections for the choosing of officers to conduct the government in which numerous candidates are to be voted for and elections specially provided for in which the people express their will upon a single proposition. It would seem a wise policy to except the latter from the provisions of a law regulating the former and to leave the latter unembarrassed by the restrictions thrown around the former. Many of the regulations as to the preparing the ballot are inapplicable to a special election and can not be literally complied with.

Subdivision 6 of article 3268 of our Revised Statutes expressly provides that: "In all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy." We think the Legislature did not intend to make the Terrell election law applicable to special elections. There has never been so far as we are aware of any complaint in reference to the operation of laws affecting such elections. The evil was in the laws affecting the general election and it was the purpose to remedy them only.

There are some provisions in the Terrell law which apply to special elections of the character of that in controversy, from which it may plausibly be argued that it was not the intention to except them from its provisions. But section 194 was added by amendment in the Senate after the bill had passed the House. The final passage in both houses was upon the last days of the session. It was hardly to be expected that in a bill of such complication consisting of 195 sections, under the pressure of business incident to the last days of the session, they would look back to eliminate every incongruity in the bill after incorporating the exceptions provided for in section 194.

We answer the first question in the negative, which eliminates the condition upon which an answer to the second was requested.