

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

December 30, 1964

Honorable Jules Damiani, Jr.
Criminal District Attorney
Galveston County
Galveston, Texas

Opinion No. C-369

Re: Qualifications for voting
in an election held
under Article 1243, R.C.S.,
for abolition of cor-
porate existence of a
city.

Dear Mr. Damiani:

You have requested an opinion on whether, in an
election for abolition of a city's corporate existence under
Article 1243, Revised Civil Statutes of Texas, a person must
be listed on the tax assessment roll of the city as a pre-
requisite for voting. You further ask whether, because of
the effect of the community property laws of the State of
Texas, a man or a woman not listed on the city tax assessment
roll who is married to a person listed on the roll as the
owner of community property would be entitled to vote in the
election.

Article 1243 reads as follows:

"All persons who are legally qualified voters
of the State and county in which such an election
is ordered, and are resident property taxpayers in
the city or town where such election is to be held,
as shown by the last assessment roll of such city
or town, shall be entitled to vote at such election.
If a majority of such voters voting at such election
shall vote to abolish such corporation, the county
judge shall declare such corporation abolished, and
enter an order to that effect upon the minutes of the
commissioners court, and from the date of such order,
said corporation shall cease to exist."[1]/

---

[1]/ Abolition of cities and towns incorporated under Chapter
1 of Title 28, R.C.S., must follow Arts. 1241, 1242 and 1243,
R.C.S., whereas abolition of towns and villages incorporated
under Chapter 11 of Title 28 must follow Art. 1261. Richardson
v. State, 199 S.W.2d 239 (Tex.Civ.App. 1947, error ref. n.r.e.).

We have concluded that the provision in Article 1243 which limits voting at the election to property taxpayers is unconstitutional, in the light of recent decisions by the Texas courts, and we are so advising you. In view of this holding, we do not answer the questions you have asked.

Article VI, Section 2 of the Texas Constitution prescribes the requirements for being a "qualified elector." Property ownership is not one of the enumerated requirements. The residence requirements are that the person "shall have resided in this State one year next preceding an election and the last six months within the district or county in which such person offers to vote."

Article VI, Section 3 of the Constitution, which has been a part of the present Constitution without change since its adoption in 1876, reads:

"All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election, within the limits of any city or corporate town, shall have the right to vote for Mayor and all other elective officers; but in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town; provided, that no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto."

Section 3a of Article VI, added to the Constitution in 1932, reads:

"When an election is held by any county, or any number of counties, or any political subdivision of the State, or any political subdivision of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or any city, town or village, for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the State, county, political subdivision, district, city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote and all electors

shall vote in the election precinct of their
residence."

These three sections of the Constitution are the
only ones prescribing the qualifications of voters generally.
There is no provision in the Constitution relating specifically
to qualifications for voting in this particular type of elec-
tion.

It is a general principle of law that where the
Constitution has prescribed the qualifications for voting
at an election, the legislature can neither add to nor take
from those qualifications. Koy v. Schneider, 110 Tex. 369,
218 S.W. 479, 221 S.W. 880 (1920); Texas Power & Light Co.
v. Brownwood Public Serv. Co., 111 S.W.2d 1224 (Tex.Civ.App.
1938, error ref.).

An election on abolition of the corporate existence
of a city is not an election to determine expenditure of money
or assumption of debt, under the provisions of Section 3 of
Article VI, nor is it an election for any of the other purposes
enumerated in Section 3a. The crucial question, then, as
applied to the present situation, is whether Section 2 of Arti-
cle VI prescribes the qualifications for voting in an election
of this nature.

In Bonham v. Fuchs, 228 S.W. 1112 (Tex.Civ.App. 1921,
error ref.), the majority of the court held that the provision
in Article 1243 limiting voting to property taxpayers was not
in conflict with Sections 2 and 3 of Article VI, saying that
Section 3 "shows upon its face that the makers of the Constitu-
tion did not intend by the provision of section 2 of this arti-
cle to confer and regulate the right of suffrage in municipal
elections in cities and towns," and that Section 2 "was only
intended to confer and regulate the right of suffrage in general
elections affecting the state as a whole." In a vigorous
dissent, one member of the court pointed out that this holding
seemed to him to be at variance with the direct former
pronouncement of the same court in Warrener v. Lambrecht,
146 S.W. 633 (Tex.Civ.App. 1912), involving an interpretation
of the same statute. We quote from the dissent in the Bonham
case:

" * * * The validity of the statute as against
the constitutional objection sustained in the trial
court in this suit was not involved, but as one of
the grounds upon which its judgment was rested /In
Warrener v. Lambrecht/ this court expressly held
that the qualifications of a voter prescribed in

section 2 did apply to an election under this article to abolish the corporate existence of a town, its language being as follows:

"'Section 2 of the Constitution, as amended in 1902, prescribing the qualifications of a voter, in addition to the requirement that he shall have resided in the state one year and in the county six months, provided that he must have attained the age of 21 years, be a citizen of the United States * * * and must have paid his poll tax and hold a receipt therefor, showing the same to have been paid before the 1st day of February next preceding the election. We think the proof offered at the trial falls short of showing that the 19 persons possessed all these prescribed qualifications. * * *'"

The Supreme Court refused an application for writ of error in the Bonham case. Although the notation of "error refused" did not at that time have the connotation of approving the principles of law declared in the Court of Civil Appeals opinion, it did connote approval of the result reached. See "Notations on Applications for Writs of Error," by Gordon Simpson, 12 Texas Bar Journal 547, 574.

In 1951 this provision in Article 1243 again came before the appellate courts in two election contest cases. Franklin v. Wilson, 242 S.W.2d 820, decided by the Eastland Court of Civil Appeals, held that the tax assessment roll provided for in Article 1243 is merely directory and provided to aid the county judge and election judges in determining who owns property within the area and are thereby eligible to vote at the election, and that votes were not rendered illegal because the names of the voters did not appear on the roll. In Polk v. Vance, 150 Tex. 586, 243 S.W.2d 829, answering certified questions to which the Dallas Court of Civil Appeals conformed its opinion in 244 S.W.2d 869, the Supreme Court held that the citizens of a city could not be deprived of their right to vote at the abolition election by the fact that the city had not compiled an assessment roll. The constitutionality of the provision in Article 1243 restricting voting to property taxpayers was not raised in either of these cases.

Neither the validity nor the construction of Article 1243 has come before an appellate court since 1951. However, there has been a series of cases decided since that date which, in our opinion, have impliedly overruled the holding in Bonham v. Fuchs. But before discussing those cases we wish to mention two other decisions rendered after 1921, the date of the Bonham case, which also bear on the question.

It has already been noted that Warrener v. Lambrecht,

146 S.W. 633, decided by the Galveston Court of Civil Appeals in 1912, held that Section 2 of Article VI applied to city elections other than those expressly mentioned in Article VI, Section 3 of the Constitution. Other cases holding to the same effect have also been decided since Bonham v. Fuchs. In Texas Power & Light Co. v. Brownwood Public Service Co., 111 S.W.2d 1224 (Tex.Civ.App. 1938, error ref.), involving qualifications of voters at a referendum election on the granting of a city franchise, the court said:

> "It is now settled law that the language of the Constitution determines the qualifications of the electorate. Neither the statutes nor the provisions of a city charter, which in home rule cities must conform with the Constitution and the general laws of the state, can impose additional qualifications as a prerequisite to the right of its citizens to vote, which are not authorized by the Constitution."

In Powell v. City of Baird, 133 Tex. 489, 128 S.W.2d 786 (1939), which involved a city bond election, the Supreme Court said that Section 2 of Article VI disqualifies as a voter, at all elections, every person who is subject to payment of a poll tax under the laws of the State unless such person has paid the tax by a certain named date. This case in effect holds that by force of its own terms Section 2 applies to all elections.

We come now to the cases decided since 1951. In Snelson v. Murray, 252 S.W.2d 720 (Tex.Civ.App. 1952, error ref., n.r.e.), the Court of Civil Appeals held that Article VI, Section 2 of the Constitution governs qualifications of voters for election of officers of a conservation district created under authority of Article XVI, Section 59 of the Constitution, and that a statute restricting voting at the election to qualified voters of the county "who own taxable real property within the district" was unconstitutional. As observed in a concurring opinion, the officers of the district are officers of the State in a broad general sense, but the election would hardly seem to come within the description of a general election "affecting the state as a whole," to which it was said in Bonham v. Fuchs that Section 2 of Article VI was only intended to apply.

In King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408 (1956), the question for determination was the validity of a statute limiting voting at an election on adoption of a school maintenance tax and bond law to qualified voters of the school district "who own property which has been

duly rendered for taxation on the tax rolls of the county."
The Supreme Court held that the adoption election was not of
a nature to make it subject to the requirements of Article VI,
Section 3a of the Constitution. After quoting the definition
of a qualified elector in Section 2 of Article VI, the Court
further held:

> "Any qualified elector, as defined by that Article,
> is entitled to vote in any election other than one
> for which additional qualifications are prescribed
> by some other provision of the Constitution. The
> Legislature was not authorized to prescribe any
> other standard for voters at the adoption election
> than that of qualified electors as defined by
> Article VI, Section 2. Koy v. Schneider, 110 Tex.
> 369, 218 S.W. 479, 221 S.W. 880; Texas Power &
> Light Co. v. Brownwood Public Service Co., Tex.
> Civ.App., 111 S.W.2d 1225, er. ref.; Snelson v.
> Murray, Tex.Civ.App., 252 S.W.2d 720, er. ref.
> n.r.e. More specifically stated, the Legislature
> was not authorized to limit the voters at the
> adoption election to 'qualified voters of such
> district who own property which has been duly
> rendered for taxation on the tax rolls of the
> county for that purpose.' All of the language
> just quoted following the words 'qualified
> voters of such district' is in conflict with
> the provisions of Article VI, Section 2, of the
> Constitution, and should therefore be stricken
> from the Act."

Richter v. Martin, 337 S.W.2d 134 (Tex.Civ.App. 1960),
involved the constitutionality of a provision in the Urban
Renewal Law limiting voting at an election on the adoption of
the law to "qualified voters residing in said city, owning
taxable property within the boundaries thereof, who have duly
rendered the same for taxation." The Court of Civil Appeals
concluded that the election did not come within the terms of
Sections 3 and 3a of Article VI, and that the provision in
question was therefore invalid under Article VI, Section 2 of
the Constitution. In reaching this result the Court of Civil
Appeals necessarily rejected the holding in Bonham v. Fuchs.
The Supreme Court disagreed with the Court of Civil Appeals on
the question of whether the election involved expenditure of
money, and held that Sections 3 and 3a of Article VI did apply
and that the limitation was valid. Martin v. Richter, 342
S.W.2d 1 (Tex.Sup. 1960). However, there is nothing in the
Supreme Court's opinion which would cast doubt on the correctness
of the Court of Civil Appeals' holding for any city election

which did not come within Sections 3 and 3a of Article VI.

Finally, the following language in the opinion of the Supreme Court in <u>Sweeny Hospital District v. Carr</u>, 378 S.W.2d 40 (Tex.Sup. 1964), raises a question as to the continuing force of the holding in <u>Bonham v. Fuchs</u>:

"We are concerned with the meaning of the phrase, 'qualified property tax paying electors /voters/' when it is used in the Constitution and in statutes to define a class of voters, and we recognize that our interpretation of the phrase as applied to the facts of this case may cause some confusion in ordering other elections. We have not sought to ferret out the many statutes which use the expression. To avoid, as much as possible, confusion that may result from our holding in this case, and with due deference to the Court of Civil Appeals' decisions heretofore noted, we will interpret the phrase in varying situations as follows: (1) when the phrase is used in the Constitution to define a class of voters in any kind or type of election, it will be interpreted to mean those electors who are qualified under Secs. 2 and 3a, Article 6 of the Constitution; (2) when used in a statute to define a class of voters in an election for any of the purposes set out in Sec. 3a, Article 6, it will be interpreted to mean those electors who are qualified under Secs. 2 and 3a, Article 6 of the Constitution, unless the Constitution itself specifies a different class of voters in the particular election; (3) when used in a statute to define a class of voters in elections for purposes other than those set out in Sec. 3a, Article 6, the words, 'property tax paying,' will, unless otherwise required by the Constitution, be disregarded as violative of Sec. 2, Article 6 (see King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408), and the phrase will be interpreted to mean those electors who are qualified under Sec. 2, Article 6 of the Constitution. In elections of the type mentioned in (3) orders and notices of elections should omit the words, 'property tax paying.'"

In the light of these recent decisions, it is our opinion that the provision limiting the voting to property taxpayers is invalid. We therefore advise you that all

electors who are qualified under Article VI, Section 2 of the Constitution should be permitted to vote at the election, and that the election orders and notices should omit any reference to property taxpayers.

## SUMMARY

The provision in Article 1243, Texas Revised Civil Statutes, which limits voting at an election for abolition of the corporate existence of a city or town to property taxpayers is in violation of Article VI, Section 2 of the Texas Constitution and is void. All persons qualified under Section 2 of Article VI are eligible to vote at the election. King v. Carlton Independent School District, 156 Tex. 365, 295 S.W.2d 408 (1956); Sweeny Hospital District v. Carr, 378 S.W.2d 40 (Tex.Sup. 1964).

Yours very truly,

WAGGONER CARR
Attorney General

By *Mary K. Wall*

Mary K. Wall
Assistant

MKW:sj

APPROVED:

OPINION COMMITTEE

J. C. Davis, Chairman
John Reeves
Pat Bailey
Milton Richardson
W. O. Shultz

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone